IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BESSIE BAGGETT,

                          Plaintiff,

                                                    Civ. Action No.
          v.                                        5:11-CV-0195 (NAM/DEP)

MICHAEL J. ASTRUE, Commisioner
of Social Security*,*

                          Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

OLINSKY LAW GROUP                     KAREN S. SOUTHWICK, ESQ.
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202

FOR DEFENDANT:

HON. RICHARD S. HARTUNIAN             BENIL ABRAHAM, ESQ.
United States Attorney                Special Assistant U.S. Attorney
Northern District of New
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Bessie Baggett, who suffers from a herniated nucleus pulposus of the cervical spine, without stenosis, mild degenerative disc disease and bulges of the lumbrosacral spine, a contusion of the right shoulder, and hypertension, has commenced this proceeding seeking judicial review of a final determination of the Commissioner of Social Security denying her application for supplemental security income ("SSI") benefits, pursuant to 42 U.S.C. § 405(g).  In support of her challenge plaintiff maintains that the Commissioner's finding that she was not disabled at the relevant times, and is therefore ineligible to receive SSI payments, resulted from an improper application of controlling legal principles and is not supported by substantial evidence in the record.

Having carefully reviewed the record in the light of plaintiff's contentions and the Commissioner's response, I recommend a finding that the Commissioner's determination is not supported by substantial evidence, and that the matter should therefore be remanded to the agency for further consideration.

I.      <u>BACKGROUND</u>

Plaintiff was born in February 1959; at the time of the administrative

2

hearing in this matter, held on December 12, 2008, she was forty-nine years old. Administrative Transcript (Dkt. No. 8) pp. 38-39; 74.[1]  She attended school only through the eighth grade, and has never received a high school equivalency diploma.  AT 38.  Plaintiff is able to read and write, and can drive.  AT 38-39.  Plaintiff lives in a two-story house in Syracuse, New York together with her husband.  AT 37, 75.

Plaintiff possesses job skills in the areas of telecommunication, customer service, management, and carpentry.  AT 38.  From July 2003 until March 2004, she worked as a part-time developmental aide trainee in a group home setting.  AT 39-40, 103, 125.  Plaintiff has also worked as a contractor's helper, cook, and sales associate.  AT 42-43, 103, 125.

Plaintiff has suffered from a lumbar spine condition since early 1997 when she began to experience lower back pain radiating into her left leg and down to her calf.[2]  AT 153, 176.  Plaintiff was seen first on January 17, 1997 by George T. Cunningham, D.C., a chiropractor, concerning the

---

[1]     Portions of the administrative transcript (Dkt. No. 8), which was compiled by the Commissioner and is comprised in large part of the medical records and other evidence that was before the agency when its decision was made, will be cited hereinafter as "AT ___."  The supplemental administrative transcript, filed by the Commissioner on October 7, 2011, (Dkt. No. 11) will be cited as "SAT ___".

[2]     It appears that plaintiff's lumbar spine issues first manifested themselves following a work-related injury suffered in January 1991.  See AT 176.

back pain, which she characterized as feeling like an "electrical shock";

Dr. Cunningham referred plaintiff to Dr. Dominick Adornato, a

neurosurgeon.  AT 176.  An x-ray of plaintiff's back, taken on January 17,

1997, revealed a reduced lumbar lordosis and subluxation of the left

sacroiliac joint.  AT 178.  Magnetic resonance imaging ("MRI") testing

conducted on February 26, 1997 showed a mild diffuse annular disc bulge

at the L4-5 level and slight diffuse bulge at L5-S1, but without nerve root

impingement.  AT 177.

Following the referral plaintiff was seen by Dr. Adornato on March

24, 1997.  AT 153.  Dr. Adornato recorded plaintiff's chief complaints as

low back pain and left leg pain, noted the fact that plaintiff was previously

treated in 1990 by Dr. Cunningham for a work-related injury, and

registered his initial impression, which included a bulging disc at L4-5.  AT

153-54.  Following her initial visit, plaintiff continued both to treat with Dr.

Adornato and to seek periodic chiropractic intervention by Dr.

Cunningham for her lower back as well as her neck pain.  *See* AT 174,

153-79, 180-90, 317-59, 378-88, 404-15, 417-22; *see also* AT 45.

Plaintiff's lower back condition was apparently aggravated on

February 14, 2004, when she slipped and fell on black ice while exiting

4

her vehicle, injuring her tailbone.  AT 181, 205.  In 2006, plaintiff was

referred by Dr. Cunningham to Dr. John F. Parker, an orthopedic surgeon.

AT 205.  After noting plaintiff's tailbone injury occasioned by her fall, and

determining that she exhibited tenderness over the coccyx and sacrum,

Dr. Parker diagnosed her as suffering from coccydynia, likely caused by

the fall, and advised her to consult with the New York Pain Center for

treatment of her symptomology.  AT 205.

Plaintiff was involved in a motor vehicle accident on October 11,

2006.  AT 310.  Following the accident she complained principally of lower

back pain as well as mild tenderness in her neck.  *Id.*  An x-ray of

plaintiff's cervical spine area revealed degenerative changes at the C5-6

level.  AT 314, 316.  MRI testing conducted on January 18, 2007 of

plaintiff's cervical spine revealed subligamentous disc herniations from

C3-4 through C5-6, more prominent at C4-5, with disc bulging involving

the C6-7 level.  AT 211.  Subsequent MRI testing of the cervical spine on

May 16, 2008 revealed discogenic disease, bulging, spondylosis, and

subligamentous disc herniation from C3-4 through C5-6, with discogenic

disease, bulging, and spondylosis at C6-7.  AT 388.

Plaintiff also underwent later MRI testing of her lumbar spine, on

December 7, 2007.  AT 210.  That testing revealed both disc protrusion

and discogenic disease, bulging and spondylosis at L4-5 as well as L1-2,

with disc bulging at L3-4 and L5-S1, and some facet and ligament

arthrosis at L4-5 and L5-S1.  *Id.*

Between 2006 and 2008 plaintiff treated with the New York Pain

Center for her pain, receiving periodic nerve block injections.  AT 362-75.

In addition, she has undergone aqua therapy, and has utilized a TENS

unit to assist in alleviating her pain.  AT 360-77.  Plaintiff has been

prescribed various medications for her pain over time, including Flexeril,

Zanoflex, Avalide, Zolpidem Tartrate, Mobic, Meloxicam, Norvasc, and

Motrin 800mg, in addition to utilizing such non-prescription medication as

Ibuprofen.  AT 44, 126, 156, 361.  Plaintiff reports, however, that she

experiences adverse side effects from her medications, including nausea

and headaches, AT 54-55, and further states that she can no longer afford

her prescription medication due to a lack of insurance coverage.  AT 123.

Despite her physical condition plaintiff is able to wash and bathe

herself, although she is unable to shower due to fear of slipping, and can

dress herself.  AT 47, 58.  Plaintiff is capable of performing some light

cleaning, including washing dishes, and can grocery shop for brief

intervals of fifteen minutes.  AT 48, 54-55, 63.   Her daily activities also

include reading and watching television.  AT 47-50.

At the hearing, plaintiff testified that she is only able to walk and

stand for one-half hour at a time without resting, can only lift

approximately the equivalent of one gallon of milk in each hand, and can

only carry such a weight for a short distance.  AT 50-51.  While plaintiff

testified that she has traveled to Mississippi by automobile approximately

twenty times in the past two years, a trip of twenty-four hours in duration,

she also stated that on those trips she must stop every hour to stretch and

walk around.  AT 51-53, 61-62.

II.    PROCEDURAL HISTORY

A.    Proceedings Before the Agency

In or about June 2006, plaintiff filed an application with the Social

Security Administration, claiming to be disabled dating back to August 1,

2004, and seeking SSI benefits as a result of her disability.  AT 74-78.

Following an initial denial of that application on August 25, 2006, AT 82,

an administrative hearing was conducted on January 26, 2009 before

Administrative Law Judge Katherine Edgell to address plaintiff's

application.  *See* AT 34-64.

7

On January 26, 2009, ALJ Edgell issued a written decision addressing plaintiff's request for benefits.  AT 15-21.  In her decision the ALJ made a *de novo* review of evidence and testimony before the agency and applied the now familiar, five step analysis for determining the issue of disability.  At step one, the ALJ found that plaintiff had not engaged in a substantial gainful activity at any relevant time.  AT 17.  She went on to conclude at step two that plaintiff suffers from several severe impairments, including "herniated nucleus pulposus of the cervical spine without stenosis, mild degenerative disc disease and bulges of the lumbosacral spine, contusion of the right shoulder and hypertension", AT 17, and at step three proceeded on to find that those impairments do not, either individually or collectively, meet or medically equal any of the listed, presumptively disabling impairments set forth within the Commissioner's regulations. AT 18; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").

Before advancing to step four of the disability protocol, ALJ Edgell surveyed the available medical evidence and determined that despite the limitations associated with her medical conditions, plaintiff retains the residual functional capacity ("RFC") "to perform a slightly reduced range of

sedentary work", in that she is able to lift and carry up to ten pounds occasionally and five pounds frequently, and can sit for six hours and stand and walk up to two hours in an eight hour workday.  AT 18.  In arriving at her RFC finding, ALJ Edgell rejected plaintiff's claims of disabling pain as not entirely credible, as well as contrary opinions of Dr. Adornato and the plaintiff's chiropractor.  AT 18-20.  After concluding, at step four, that plaintiff is unable to perform any of her past relevant work ALJ Edgell applied the Commissioner's medical-vocational guidelines (the "grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, taking into account his RFC finding and plaintiff's other relevant characteristics, and concluded that a finding of not disabled was directed by Rule 201.18 of the grids.  AT 20-21.  Based upon her findings, ALJ Edgell concluded that plaintiff was not disabled at any of the relevant times, and is therefore ineligible to receive SSI benefits.  *Id.*

Plaintiff filed a request for review of the ALJ's determination with the Social Security Administration Appeals Council ("SSAAC").  SAT 11-11a. By decision issued on January 14, 2011 the Appeals Council approved of the ALJ's analysis to step five, but concluded that consideration of the grids warranted a finding of disability beginning on January 31, 2009, five

days after the ALJ rendered her decision, based upon the fact that on that

date she transitioned into the "advanced age" category of the grids – a

fact which is outcome determinative and alters the result from not disabled

to disabled, thereby concluding that she was entitled to SSI benefits from

that date forward.  SAT 7b-7e.  The ALJ's decision, as modified by the

decision of the SSAAC, is now a final determination of the agency for

purposes of this proceeding.

    B.   <u>This Action</u>

    Plaintiff commenced this action on February 18, 2011.  Dkt. No. 1.

Issue was thereafter joined by the Commissioner's filing of an answer on

July 25, 2011, followed by submission on the next day of an administrative

transcript of the evidence and proceedings before the agency, and the

subsequent filing of a supplemental administrative transcript on October 7,

2011.  Dkt. Nos. 7, 8, 11.  With the receipt of plaintiff's brief on December

7, 2011, and a brief on behalf of the Commissioner on January 23, 2012,

the matter is now fully briefed and ripe for determination, and has been

referred to me for the issuance of a report and recommendation pursuant

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(d).  See also FED. R. CIV. P. 72(b).

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal*

*v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817

F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to

whether the Commissioner applied the proper legal standards, his

decision should not be affirmed even though the ultimate conclusion

reached is arguably supported by substantial evidence.  *Martone*, 70 F.

Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986).  If, however, the

correct legal standards have been applied, and the ALJ's findings are

supported by substantial evidence, those findings are conclusive, and the

decision should withstand judicial scrutiny regardless of whether the

reviewing court might have reached a contrary result if acting as the trier

of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d

11

Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427 (quoting *Consolidated Edison Co.*, 308 U.S. at 229, 59 S. Ct. 219); *Martone,* 70 F. Supp. 2d at 148 (quoting *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards

have been applied, and/or that substantial evidence does not support the

agency's determination, the agency's decision should be reversed.  42

U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the

court may remand the matter to the Commissioner under sentence four of

42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to

develop a full and fair record or to explain his or her reasoning.  *Martone*,

70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.

1980)).  A remand pursuant to sentence six of section 405(g) is warranted

if new, non-cumulative evidence proffered to the district court should be

considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and*

*Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand,

while unusual, is appropriate when there is "persuasive proof of disability"

in the record and it would serve no useful purpose to remand the matter

for further proceedings before the agency.  *See Parker*, 626 F.2d at 235;

*see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir.

1992); *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 644

(2d Cir. 1983).

    B.    <u>Disability Determination: The Analytical Framework</u>

The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* at § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* at

§§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed,

then the second step involves an examination of whether the claimant has

a severe impairment or combination of impairments which significantly

14

restricts his or her physical or mental ability to perform basic work activities.  *Id.* at §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* at §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that

15

burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

      C.    <u>The Arguments in this Case</u>

In support of her challenge of the Commissioner's determination plaintiff raises several arguments.  First, she contends that the ALJ erred by concluding that her condition does not meet or medically equal Listing 1.04, and by failing to detail her rationale for arriving at that determination. Plaintiff further argues that the ALJ improperly rejected opinions of Dr. Adornato, her longstanding treating physician, concerning her capabilities and the limitations associated with her medical condition.  Next, plaintiff maintains that the ALJ improperly rejected her subjective complaints regarding the limitations associated with her various physical conditions. Lastly, she submits that it was error to apply the grids to her circumstances, rather than relying on the testimony of a vocational expert, in light of the ALJ's finding that she cannot perform the full range of exertional requirements associated with sedentary work.

      1.    <u>Listing 1.04</u>

By regulation, the Commissioner has set forth a series of listed

16

impairments describing a variety of physical and mental conditions, indexed according to the body system affected.[3]  20 C.F.R. Pt. 404, Subpt. P, App. 1; *see Sullivan v. Zebley*, 493 U.S. 521, 529-30, 110 S. Ct. 885, 891 (1990).  By regulation, the listed impairments are deemed to be presumptively disabling – "[t]hat is, if an adult is not actually working and his [or her] impairment matches or is equivalent to a listed impairment, he [or she] is presumed unable to work and is awarded benefits without a determination whether he [or she] actually can perform his [or her] own prior work or other work."  *Zebley*, 493 U.S. at 532, 110 S. Ct. at 892 (citing *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987)).

At step three of the now familiar, five part disability analysis, an ALJ must determine whether the condition from which a claimant suffers meets or equals a listed impairment.  20 C.F.R. §§ 404.1520(d), 416.920(d); *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris*, 728 F.2d at 584).  The burden of establishing that a condition meets or equals one of the listed

---

[3]     The listings are broken down into fifteen categories, including growth impairment, musculoskeletal system, special senses and speech, respiratory system, cardiovascular system, digestive system, genitourinary impairments, hematological disorders, skin disorders, endocrine disorders, impairments that affect multiple body systems, neurological, mental disorders, malignant neoplastic diseases, and immune system.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

impairments rests with the claimant.  *Shaw*, 221 F.3d at 132; *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000).

A claimant may therefore definitively establish disability at step three by proving that his or her impairment meets all of the literal requirements of a particular listing.  20 C.F.R. §§ 404.1520(d), 416.920(d). Alternatively, disability may be shown when, while not meeting the specific criteria of a listing, a claimant's condition is equivalent to a listed condition. *Id.*  "For a claimant to qualify for benefits by showing that his [or her] unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he [or she] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531, 110 S. Ct. at 891 (citing 20 C.F.R. § 416.926(a)) (emphasis in original).  "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his [or her] unlisted impairment or combination of impairments is as severe as that of a listed impairment."  *Zebley*, 493 U.S. at 531, 110 S. Ct. at 892 (citation omitted).

In her decision ALJ Edgell summarily concluded that plaintiff does not suffer from an impairment or combination thereof meeting or medically

18

equaling any of the listed impairments.  AT 18.  Unfortunately, however, her decision fails to provide enlightenment concerning her reasoning for rejecting any of the listed conditions, nor in fact does it even reference any particular listing considered – although in this instance it is not difficult to discern which could apply.

Undeniably, inclusion in an ALJ's decision of reference to all of the listed conditions considered and a statement of reasons for finding that the particular claimant's conditions to not meet or medically equal any of those considered is a practice to be encouraged in order to allow for meaningful judicial review of resulting determinations.  Nonetheless, as the Commissioner argues, the failure of an ALJ to set forth a specific rationale in support of the conclusion that a claimant's conditions do not meet or equal any of the listed conditions is not fatal, provided that the conclusion is supported by substantial evidence.  *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982); *see also Flors v. Massanari*, No. 00 CIV 5767, 2002 WL 100631, at *6 (S.D.N.Y. Jan. 25, 2002); *Seaton v. Astrue,* No. 5:06-cv-0756, 2010 WL 289561, at * 8 (N.D.N.Y. Jul. 29, 2010) (Kahn, J.).  In this case, however, I am unable to conclude that the rejection of the pertinent listed condition is in fact supported by substantial evidence.

19

The most pertinent provision in this case is Listing 1.04.  That listing

provides, in relevant part, as follows:

> **1.04 *Disorders of the spine*** (*e.g.,* herniated
> nucleus pulposus, spinal arachnoiditis, spinal
> stenosis, osteoarthitis, degenerative disc disease,
> facet arthritis, vertebral fracture), resulting in
> compromise of a nerve route (including the cauda
> equina) or the spinal cord.  With:
>
> A. Evidence of nerve root compression
> characterized by neuro-anatomic distribution of
> pain, limitation of motion of the spine, motor loss
> (atrophy with associated muscle weakness or
> muscle weakness) or accompanied by sensory or
> reflex loss and, if there is involvement of the lower
> back, positive straight-leg raising test (sitting and
> supine); . . .

20 C.F.R. Pt. 404, Subpt. P. App.1, Listing 1.04.[4]

The record contains considerable evidence that plaintiff suffers from

both cervical and lumbar spinal conditions with resulting nerve root

compromise.  As early as 1997, based upon MRI testing, Dr. Adornato

diagnosed the plaintiff as suffering from a mild herniated disc at L4-5.  AT

174.  MRI testing conducted on December 7, 2007 revealed "disc

protrusion superimposed on discogenic disease, bulge and spondylosis"

_____

[4]      The remaining portions of Listing 1.04 are not applicable since the record
lacks any evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in
pseudoslaudication.

at L4-L5, "[d]iscogenic disease, bulge and spondylosis at L1-L2", some bulging at L3-L4 and L5-S1, and some facet and ligamentous arthrosis at L4-L5, and again at L5-S1.  AT 210.  Similarly, results from testing of plaintiff's cervical spine confirms the existence of spinal disorders qualifying under the first portion of listing 1.04.  An MRI of plaintiff's cervical spine, conducted on January 18, 2007, revealed "[s]ubligamentous disc herniations from C3-C4 through C5-C6 more prominent at the C4-C5 level than the other levels. . . superimposed on disc bulging", with disc bulging also involving C6-C7, but with no foraminal stenosis.  AT 211.  MRI testing on May 16, 2008 of the plaintiff's cervical spine, though revealing no significant change, confirmed the earlier test results from January 2007.  AT 388.  That MRI testing also revealed "kyphotic hyperangulation of the cervical curvature with the apex at this level." *Id.*

The record is also replete with references to evidence of nerve root compression.  Plaintiff's early reports of lumbar pain were accompanied by complaints of pain and numbness in her left leg.  AT 153, 175-76.  On March 24, 1997, plaintiff reported experiencing numbness in her left thigh and leg to Dr. Adornato, and on examination on that occasion she

21

exhibited positive straight leg raising on the left side at sixty degrees, as

well as a moderately restricted range of motion in her lumbar spine.  AT

153-54.  Plaintiff again reported significant pain in her left leg and

demonstrated positive straight leg rising on the left side at seventy

degrees and a restriction in lumbar spine range of motion when examined

by Dr. Adornato on April 3, 1997.  AT 175.

It is true, as the Commissioner argues, that these reports predate

the relevant disability onset date.  Such reports can, however, prove to be

relevant to a claimant's later condition provided that there is indication that

the symptoms experienced extended in duration into the relevant time

period.  *See Carmickle v. Comm'r Soc. Security Admin.*, 533 F.3d 1155,

1165 (9th Cir. 2008); *Timpson v. Astrue*, No. 9:10-1975-HMH, 2011 WL

4368695, at *2 (D.S.C. Sep. 19, 2011); *Pippen v. Astrue*, No. 1:09cv308,

2010 WL 3656002, at *9 (W.D.N.C. Aug. 24, 2010).  In this instance, such

evidence exists in the record.  Dr. Adornato continued to document

plaintiff's complaints of pain radiating into her left buttock and down to her

left side to her knee during visits in 2003.  *See, e.g.,* AT 156, 162-63.

Notes of those visits also reflect positive straight leg raising results and

restrictions in range of motion of her lumbar spine.  AT 156, 161-63.

22

Evidence of similar complaints is also found in subsequent notes of plaintiff's visits to Dr. Cunningham, her chiropractor.  On May 22, 2007, Dr. Cunningham reported a left straight leg raising result of only fifty degrees, as opposed to sixty-five degrees on the right side.  AT 321. Similarly, plaintiff reported to Dr. Eric Tallarico, of the New York Pain Center, on January 2, 2008 that she continued to experience mid and low back pain, intermittently radiating down her left leg to her knee.  AT 362. On examination during that consultation, plaintiff exhibited reduced range of motion.  AT 363.  Dr. Cunningham also wrote on October 13, 2006 that in addition to her neck pain, plaintiff reported intermittent left lower extremity pain extending down to her knee and associated with her back pain.  AT 189.  Dr. Cunningham further noted that plaintiff reported "tripping a lot when her leg is symptomatic."  *Id.*

Plaintiff's testimony at the hearing in this matter is fully consistent with these various reports.  Plaintiff testified to having experienced pain radiating into her left leg, describing not only pain but additional numbness in her legs during the course of the hearing.  AT 56-59.

In light of the foregoing evidence of nerve root involvement, the ALJ's rejection of a finding that plaintiff's condition meets or medically

23

equals Listing 1.04 cannot withstand judicial scrutiny and alone provides

alone a basis for reversal of the Commissioner's determination.

*Schnetzler v. Astrue*, 544 F. Supp. 2d 272, 289-90 (E.D.N.Y. Feb. 5,

2008) (finding that the ALJ improperly substituted her opinion for the

observations of the plaintiff's treating physician on the issue of nerve root

involvement); *Muntz v. Astrue*, 540 F. Supp. 2d 411, 420 (W.D.N.Y. Mar.

17, 2008) (finding that the ALJ improperly substituted his own opinion for

the opinions of plaintiff's treating physicians concerning the plaintiff's

nerve root impingement, neuro-anatomic distribution of pain, limitation of

spinal motion, muscle atrophy, sensory loss, motor loss, and positive

straight leg raising tests); *Jones v. Barnhart*, No. CV-04-2772 (FB)(VVP),

2004 WL 3158536, at *7 (E.D.N.Y. Feb. 3, 2004) (finding that the ALJ

failed to adequately explain why he concluded that the claimant had a

back disorder and right shoulder pain, impairments that are severe within

the meaning of the regulations but not severe enough to meet or medically

equal one of the listed impairments and remanding for further

development of the records with instructions to the ALJ to "afford proper

weight to [the claimant's] testimony regarding the pain that he endured.")

## 2. Treating Physician

On July 25, 2008, plaintiff's longstanding treating physician, Dr.

Adornato, provided a medical source statement reflecting plaintiff's

inability to perform even a full range of sedentary work, based upon her

limitations in sitting, standing and walking, the requirement that she have

scheduled breaks, and the likelihood of being absent from work for more

than four days per month.  AT 416-22.  In arriving at her determination,

ALJ Edgell rejected Dr. Adoranto's opinions as not clinically supported.

AT 18-19.

Ordinarily, the opinion of a treating physician regarding the nature

and severity of an impairment is entitled to considerable deference,

provided that it is supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with other

substantial evidence.  *Veino*, 312 F.3d at 588; *Barnett v. Apfel*, 13 F.

Supp. 2d 312, 316 (N.D.N.Y. 1998) (Hurd, M.J.).[5]  Such opinions are not

---

[5]    The regulation which governs treating physicians provides:

Generally, we give more weight to opinions from your
treating sources . . . . If we find that a treating source's
opinion on the issue(s) of the nature and severity of
your impairment(s) is well-supported by medically
acceptable clinical and laboratory diagnostic techniques
and is not inconsistent with the other substantial
evidence in your case record, we will give it controlling
weight.  When we do not give the treating source's
opinion controlling weight, we apply [various factors] in

controlling, however, if they are contrary to other substantial evidence in the record, including the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.

If the ALJ does not give controlling weight to a treating source's opinion, he or she must apply several factors to determine what degree of weight should be assigned to the opinion, including 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the degree to which the medical source has supported his or her opinion; 4) the degree of consistency between the opinion and the record as a whole; 5) whether the opinion is given by a specialist; and 6) other evidence which may be brought to the attention of the ALJ.  *See* 20 C.F.R. §§ 404.1527, 416.927.   When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

---

determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

26

The failure to apply the appropriate legal standards for considering a treating physician's opinions constitutes a proper basis for reversal of an ALJ's determination, as is the ALJ's failure to provide reasons for rejection of his or her opinions.  *See Johnson*, 817 F.2d at 986; *Barnett*, 13 F. Supp. 2d at 316-17.

The ALJ's rejection of Dr. Adornato's opinions is not well-supported. At the time his opinions were rendered Dr. Adornato had treated plaintiff for her lumbar, and later cervical, disc conditions for more than eleven years, with significant frequency.  In rendering his opinions Dr. Adornato noted his diagnoses, supported by plaintiff's significant limitation in range of motion, positive straight leg raising, muscle spasms, and tenderness. AT 417-18.   Contrary to the ALJ's impressions the opinions of Dr. Adornato, who is a neurosurgical specalist, are in fact well-supported by objective medical findings, including MRI reports of plaintiff's cervical and lumbar spine abnormalities.  *See, e.g.*, AT 158, 210-11, 381, 385, at 389.

Dr. Adornato's reports are also entirely consistent with opinions of plaintiff's chiropractor, Dr. Cunningham, who likewise has treated her over a lengthy period of time.  *See* AT 404-09.   It is true that the opinions of Dr. Cunningham are not subject to the treating physician rule.  *Diaz v.*

27

*Shalala*, 59 F.3d 307, 314 (2d Cir. 1995); *Toro v. Chater*, 937 F. Supp. 1083, 1091-92 (S.D.N.Y. 1996).  In order to be given controlling weight under that rule, a treating source's opinion must represent a "medical opinion".  *See generally* 20 C.F.R. § 404.1527; *Diaz*, 59 F.3d at 313; *Toro*, 937 F. Supp. at 1091-92.  Under the regulations, a chiropractor is not an "acceptable medical source" qualified to give a medical opinion.  *Diaz*, 59 F.3d at 313 (discussing 20 C.F.R. §§ 404.1513(a) and (e)); *Toro*, 937 F. Supp. at 1091-92.  Since a chiropractor cannot provide a medical opinion, chiropractor's opinions are not subject to the treating physician rule, and consequently there is no "hard and fast rule" governing the weight which an ALJ must give a chiropractor's opinion.  *Diaz*, 59 F.3d at 313, 314 n. 8; *Toro*, 937 F. Supp. at 1091-92.

That is not to say, however, that Dr. Cunningham's opinions are insignificant.  Indeed, the regulations provide that a chiropractor's opinion may properly be considered for the purpose of assisting the ALJ in understanding how a claimant's impairment affects his or her ability to work.  *Chandler v. Callahan*, No. 96-CV-1790, 1998 WL 99384, at *5 (N.D.N.Y. Feb. 23, 1998) (Pooler, J. and DiBianco, M.J.) (citing 20 C.F.R. §§ 404.1513(c)(3), 416.913(c)(3)).

The sole basis offered by the ALJ in rejecting Dr. Adornato's

opinions are the plaintiff's reports of temporary improvement in her

condition through the use of between eight and nine epideral blocks,

accounts of her daily activities, and her several "cross-country drives".   AT

18-19, 45-46.   These factors, however, do not undermine Dr. Adornato's

opinions.   The nerve blocks, of which plaintiff has had several, clearly

provide only temporary relief, at best, from her pain.   Nothing about

plaintiff's daily activities or her trips to Mississippi suggests her ability to

sit, stand, and walk for longer periods than opined by Dr. Adornato,

particularly since his opinions were based upon an eight hour work day

with normal breaks.   In her hearing testimony, plaintiff testified that when

driving to Mississippi she is required to stop at least hourly and to walk

and stretch for periods of thirty to forty-fifty minutes, something that

cannot reasonably be characterized as constituting normal breaks.   *See*

*Archambault v. Astrue*, No. 09 CIV 6363 (RJS)(MHD), 2010 WL 5829378

(S.D.N.Y. Dec. 13, 2010) (finding treating physician's opinion that the

plaintiff, who could not stand and walk for less than two hours, could sit no

more than four hours, and would require frequent breaks, was incapable

of performing even sedentary work was supported by objective evidence),

*report and recommendation adopted*, 2011 WL 649665 (S.D.N.Y. Feb. 17, 2011).

In sum, I find that the ALJ's rejection of Dr. Adornato's opinions, which are contrary to her RFC finding, is not supported by substantial evidence.

### 3.    Credibility

In arriving at her RFC finding ALJ Edgell also rejected plaintiff's subjective complaints of pain as not fully credible.  AT 19-20.  Plaintiff challenges that determination.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus*). Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain*.  See Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the

30

claimant's credibility, his or her motivation, and the medical evidence in the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[6]  *Barnett*, 13 F. Supp. 2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness,, and side effects of any medications taken; 5)

---

[6]  In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject the claimant's testimony.  *Martone*, 70 F. Supp. 2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

During the hearing plaintiff testified regarding the pain she experiences, which radiates into her left leg and creating numbness, stating that she is only able to sit for one hour without getting up and stretching, and can stand and walk for only one-half hour without resting.

AT 50-57.  The ALJ rejected that testimony largely on the same basis as
supported her rejection of Dr. Adornato's professional opinions.  Once
again, however, the plaintiff's testimony is not undermined by the
existence of temporary relief provided by epideral nerve block injections,
nor does her testimony regarding her daily activities and trips to
Mississippi provide a basis for calling into question her testimony.  When
shopping, plaintiff limits her trips to fifteen minutes.  AT 63.  When driving
to Mississippi, she is required to stop hourly and rest for between thirty
and forty-five minutes.  AT 61-62.  These accounts simply do not provide
a proper basis for rejecting plaintiff's subjective pain complaints.

>        4.      The Grids

The last error claimed by the plaintiff concerns the ALJ's reliance
upon the medical vocational guidelines to conclude that she was not
disabled at the relevant times.  In applying the grids the ALJ utilized her
RFC determination, in which she found that plaintiff has the ability to
perform a "slightly reduced" range of sedentary work, and that she can lift
and carry objects weighing ten pounds occasionally and five pounds
frequently, and sit for six hours and stand and walk for two hours in an

eight hour work day.[7]  AT 18.

Ordinarily, the Commissioner can meet his burden in connection with the fifth step of the relevant disability test by utilizing the grid.  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986).  The grid takes into consideration a claimant's RFC, as well as his or her age, education and work experience, in order to determine whether he or she can engage in substantial gainful work in the national economy.  *Rosa*, 168 F.3d at 78.  Whether or not the grid should be applied in order to make a step five determination presents a case-specific inquiry which depends on the particular circumstances involved. *Bapp*, 802 F.2d at 605.  If a plaintiff's situation fits well within a particular classification, then resort to the grid is appropriate.  *Id.*  If, on the other

---

[7]     Sedentary work is defined by regulation as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  In addition, a subsequent ruling has clarified that sedentary work generally involves periods of standing or walking for a total of two hours in an eight hour work day, with sitting up to a total of approximately six hours in a similar period.  *See* Social Security Ruling 83-10.

hand, nonexertional impairments, including pain, significantly limit the range of work permitted by exertional limitations, then use of the grid is inappropriate, in which case further evidence and/or testimony is required.[8] *Rosa*, 168 F.3d at 78; *Bapp*, 802 F.2d at 605-06.

The ALJ's reliance upon the grids in this case constituted error for two reasons.  First, the ALJ gave no explanation as to whether or not the "slight" reduction in the range of sedentary work capable of being performed by the plaintiff, from an exertional standpoint, would erode the basis upon which the grids are predicated and require instead that a vocational expert be consulted.  More fundamentally, the ALJ's resort to the grids failed to take into account plaintiff's pain as a non-exertional limitation.  The record is saturated with indications of the cervical and lumbar pain, as well as right shoulder pain, experienced by the plaintiff together with the efforts made, through prescription medication, use of a TENS unit, aqua therapy, and epideral injections, to control her pain.  Use

---

[8]     As one court has explained,

> [a] nonexertional limitation is one imposed by the claimant's impairments that affect [his or] her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain.

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. § 404.1569a(a), (c)).

of the grids to satisfy the Commissioner's burden at step five of the

disability analysis, given these factors, represents an error compounding

the effect of the other errors contained within the ALJ's decision. *Reinard*

*v. Astrue*, No. 09-CV-0508A, 2010 WL 2758571, at *9 (W.D.N.Y. Jul. 13,

2010) ("The use of the grids was not appropriate in light of the Plaintiff's

many and severely limiting exertional and non-exertional symptoms. The

ALJ should have given controlling weight to the opinions of . . . the

Plaintiff's treating cardiologist."); *Jerome v. Astrue*, No. 2:08-CV-98, 2009

WL 3757012, at *10 (D.Vt. Nov. 6, 2009) ("The ALJ further erred in its use

of the Medical–Vocational Guidelines ('the grids') to decide that Jerome

was not disabled without first determining, with specific reference to the

record, that Jerome's nonexertional impairments were not significant.").

    D.    <u>Scope of Remand</u>

    In light of my recommendation that the Commissioner's

determination be reversed, I must next address the scope of the court's

remand of the matter to the agency.  As relief, plaintiff asks that the court

remand the matter to the Commissioner with a directed finding of

disability, for the limited purpose of calculating benefits.

    Section 405(g) of the Social Security Act provides for two types of

remands: remands pursuant to sentence four of that section, and those

pursuant to sentence six.  42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501

U.S. 89, 97-98, 111 S. Ct. 2157, 2163 (1991) (citing *Sullivan v.*

*Finkelstein,* 496 U.S. 617, 623-29, 110 S. Ct. 2658, 2662-66 (1990)).

Sentence four provides that:

> [t]he court shall have power to enter, upon the
> pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of
> the Commissioner of Social Security, with or
> without remanding the cause for a rehearing.

42 U.S.C. § 405(g).  As this language plainly suggests, sentence four

contemplates the entry of judgment upon the pleadings, as well as based

on a transcript of the record below.[9]

---

[9]    Sentence six of section 405(g), by contrast, provides that:

> [t]he court may, on motion of the Commissioner of Social
> Security made for good cause shown before the
> Commissioner files the Commissioner's answer, remand
> the case to the Commissioner of Social Security for further
> action by the Commissioner of Social Security, and it may
> at any time order additional evidence to be taken before the
> Commissioner of Social Security, but only upon a showing
> that there is new evidence which is material and that there
> is good cause for the failure to incorporate such evidence
> into the record in a prior proceeding; and the Commissioner
> of Social Security shall, after the case is remanded, and
> after hearing such additional evidence if so ordered, modify
> or affirm the Commissioner's findings of fact or the
> Commissioner's decision, or both, and shall file with the
> court any such additional and modified findings of fact and
> decision, and . . . a transcript of the additional record and
> testimony upon which the Commissioner's action in

As can be seen, the court retains the discretion to modify or reverse

the decision below and, if deemed appropriate, to remand the matter to

the agency in order to allow gaps in the evidentiary record to be filled, or

for discerned errors to be addressed.  *E.g., Rosa,* 168 F.3d at 82-83;

*Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996).  Alternatively, when there

is no reason to believe that remand would serve any useful purpose the

court may, in its discretion, deem it appropriate to remand solely for a

calculation of benefits.  *Balsamo v. Chater,* 142 F.3d 75, 82 (2d Cir.

1998).  Reversal and remand for the calculation of benefits is only

warranted "when there is 'persuasive proof of disability' [in the record] and

further development of the record would not serve any purpose."  *Steficek*

*v. Barnhart*, 462 F. Supp. 2d 415, 418 (W.D.N.Y. 2006) (quoting *Rosa*,

168 F.3d at 83).  Remand for further consideration, on the other hand, is

justified when the ALJ has applied an improper legal standard, or further

─────────────────────

modifying or affirming was based.

*Id.*  Sentence six, then, contemplates remand in one of two situations – where the agency requests remand before answering the complaint ("clause one"), or where new, material evidence is presented that was for good cause not presented before the Administration ("clause two").  *Id.*; *Shalala v. Schaefer*, 509 U.S. 292, 297 n.2, 113 S. Ct. 2625, 2629 n.2 (1993) (citing *Melkonyan*); *Melkonyan*, 501 U.S. at 100 n.2, 111 S. Ct. at 2164 n.2; *Raitport v. Callahan,* 183 F.3d 101, 104 (2d Cir. 1999); *Medina v. Apfel,* No. 00 CIV. 3940, 2001 WL 1488284, at *4 (S.D.N.Y. Nov. 21, 2001).   This case presents neither of these situations.

findings and explanations would clarify the ALJ's decision. *See Rosa,* 168 F.3d at 82-83; *Parker,* 626 F.2d at 235; *Steficek*, 462 F. Supp. 2d at 418 (citing *Pratts,* 94 F.3d at 39).

In this instance, I am unable to say that on remand, and with a proper analysis, including testimony from a vocational expert, a finding of disability prior to January 26, 2009 would necessarily result. Accordingly, I am recommending that the matter be returned to the agency for further consideration, without a directed finding of disability, for the purpose of permitting the Commissioner to make further findings and offer additional explanations of the evidence, and not because of a finding that there is persuasive proof of disability in the existing record.

IV.    SUMMARY AND RECOMMENDATION

The ALJ's decision in this matter is rife with error, including based upon 1) her failure to indicate the Listing(s) considered at step three of the analysis and provide her reasoning for concluding that plaintiff's condition does not meet or medically equal any listed impairment, 2) the unsupported rejection of the opinions of Dr. Adornato, plaintiff's treating neurosurgeon of many years, as augmented by opinions of her treating chiropractor; 3) the ALJ's erroneous and improperly explained rejection of

plaintiff's complaints of disabling pain; and 4) the ALJ's improper resort to the grids in light of the fact that plaintiff is not able to perform a full range of sedentary work, and based upon her non-exertional limitations, including pain.  It is therefore respectfully

RECOMMENDED that plaintiff's motion for judgment on the pleadings be GRANTED, the Commissioner's determination VACATED, and the matter REMANDED to the agency for further consideration.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:       June 13, 2012
             Syracuse, NY

David E. Peebles
U.S. Magistrate Judge